UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

STATE OF TEXAS
*Plaintiff*,

v.

XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE FOR CIVIL RIGHTS,
*Defendants.*

No. 7:23-cv-00022-DC

# STATE OF TEXAS'S ORIGINAL COMPLAINT

The Biden Administration has repeatedly attempted to impose through executive fiat a federal right to abortion that does not exist. In the Administration's war against *Dobbs v. Jackson Women's Health*, Defendants have issued a "guidance" document and associated press release that, if allowed to remain effective, require pharmacies to dispense abortion-inducing drugs in violation of State law (collectively, the "Pharmacy Mandate")—purportedly as a condition of receiving Medicare and Medicaid funds.

But whether the Biden Administration likes it or not, the question of abortion is up to the people's elected representatives—not unelected bureaucrats. The Biden Administration's attempt to inject itself into that question is both procedurally and substantively illegal. The Pharmacy Mandate was adopted without following the required procedures. It misrepresents

federal law. It usurps pharmacies' duty to comply with Texas law. It misconstrues and violates the Spending Clause. By any measure, the Pharmacy Mandate is improper.

The Court should vacate the Pharmacy Guidance, set it aside, and enjoin the Defendants' enforcement of it.

## I. Parties

1. Plaintiff the State of Texas is a sovereign State of the United States.

2. Defendant Xavier Becerra is Secretary of the United States Department of Health and Human Services (HHS). He is sued in his official capacity.

3. Defendant HHS is a cabinet-level executive branch department of the United States.

4. Defendant Department of Health and Human Services Office for Civil Rights (OCR) is a division of HHS.

## II. Jurisdiction & Venue

5. This Court has jurisdiction under 5 U.S.C. §§ 702 and 703 and 28 U.S.C. §§ 1331, 1346, and 1361.

6. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1361, 2201, and 2202.

7. Venue is proper in this District under 28 U.S.C. § 1391.

## III. Background

### A. The Biden Administration's Response to Dobbs

8. On June 24, 2022, the Supreme Court of the United States overturned *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022). The Supreme Court held that "the Constitution does not confer a right to abortion" and "does not prohibit the citizens of each State from regulating or prohibiting abortion." *Id.* at 2279, 2284.

9. The Biden Administration's attempt to nullify *Dobbs* began that very day when President Biden held a press conference and announced that "[t]he only way we can secure a woman's right to choose and the balance that existed is for Congress to restore the protections of *Roe v. Wade* as federal law."[1]

10. The Administration's nullification effort continued with a statement from Attorney General Merrick Garland that misinterpreted federal law. Garland stated, "States may not ban Mifepristone"—a drug also known as RU 486 that can be used to cause an abortion during the early part of a pregnancy—"based on disagreement with the FDA's expert judgment."[2] In fact, *Dobbs*'s holding that "[t]he Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion," 142 S. Ct. at 2284, permits states to ban abortions even when induced through the use of Mifepristone.

---

[1] *Remarks by Pres. Biden on the Supreme Court Decision to Overturn Roe v. Wade*, The White House (June 24, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/06/24/remarks-by-president-biden-on-the-supreme-court-decision-to-overturn-roe-v-wade/ (last visited Feb. 6, 2023).

[2] *Atty. Gen. Merrick B. Garland Stmt. on Supreme Court Ruling in Dobbs v. Jackson Women's Health Org.*, Dept. of Justice, https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-supreme-court-ruling-dobbs-v-jackson-women-s (last visited Feb. 6, 2023).

11. The next day, Defendant Secretary Becerra stated in an interview that Americans "can no longer trust" the Supreme Court.[3] When asked what he was doing "in response to the Court's decision," Beccera responded, "we have no right to do mild. And so we're going to be aggressive and go all the way."[4]

12. On July 8, 2022, President Biden issued Executive Order 14,076, titled "Protecting Access to Reproductive Healthcare Services." 87 Fed. Reg. 42053 (2022). Among other things, that Order required Becerra to submit a report to the President "identifying potential actions: (A) to protect and expand access to abortion care, including medication abortion; and (B) to otherwise protect and expand access to the full range of reproductive healthcare services, including actions to enhance family planning services such as access to emergency contraception." *Id.* at 42053–54.

13. In response to President Biden's Executive Order, federal officials and agencies promulgated several mandates relating to the provision of abortions and abortion-inducing drugs.

14. The Administration opened one front of its war on *Dobbs* on July 11, 2022, when HHS promulgated an Abortion Mandate contorting the Emergency Medical Treatment and Labor Act into a directive that hospitals and emergency-medicine physicians perform abortions as a condition of receiving Medicaid and Medicare funds.[5] While a district court has enjoined enforcement of

---

[3] *HHS Secy. Becerra talks women's future with abortion following Roe v. Wade decision* (NBC News broadcast June 25, 2022), https://www.nbcnews.com/video/women-s-future-with-abortion-implementing-harm-reduction-with-addiction-142836293922, at 1:45 (last visited Feb. 6, 2023).

[4] *Id.* at 2:19, 2:59.

[5] *Reinforcement of EMTALA Obligations specific to Patients who are Pregnant or are Experiencing Pregnancy Loss*, Ctrs. for Medicare & Medicaid Servs. (July 11, 2022), https://www.cms.gov/files/document/qso-22-22-hospitals.pdf (last visited Feb. 6, 2023) (Exh. 3).

that diktat in Texas,[6] the Administration has made clear that it is fighting a hot war: it is suing the State of Idaho to obtain a declaration that a federal anti-patient-dumping statute somehow overrides duly-enacted state abortion restrictions.[7]

15. Just two days later, the Biden Administration opened yet another front in its war on *Dobbs*: the Pharmacy Mandate. The Defendants issued a press release[8] and a document titled, "Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services the Pharmacy Mandate" (together, "Pharmacy Mandate").[9] The Mandate purports to require pharmacies that receive Medicare and Medicaid payments to stock and dispense abortifacients for elective abortion purposes. It threatens legal action against those pharmacies and pharmacists that do not.

**B. The Pharmacy Mandate**

16. The Pharmacy Mandate stipulates that "as recipients of federal financial assistance, including Medicare and Medicaid payments, pharmacies are prohibited under law from discriminating based on race, color, national origin, sex, age, and disability in their programs and activities. This includes supplying prescribed medications; making determinations regarding the

---

[6] *Texas v. Becerra*, No. 5:22-cv-185-H (N.D. Tex.) (Jan. 13, 2023).

[7] *United States v. Idaho*, No. 1:22-CV-329, Dkt. No. 1 (D. Idaho, Aug. 2, 2022).

[8] *HHS Issues Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services*, HHS, https://www.hhs.gov/about/news/2022/07/13/hhs-issues-guidance-nations-retail-pharmacies-clarifying-their-obligations-ensure-access-comprehensive-reproductive-health-care-services.html (last visited Feb. 6, 2023) (Exh. 1).

[9] *Guidance to Nation's Retail Pharmacies: Obligations Under Fed. Civil Rights Laws to Ensure Access to Comprehensive Reproductive Health Care Servs.*, https://www.hhs.gov/sites/default/files/pharmacies-guidance.pdf (last visited Feb. 6, 2023) (Exh. 2).

suitability of prescribed medications for a patient; and advising a patient about prescribed medications and how to take them."[10]

17. The Pharmacy Mandate requires pharmacies to dispense abortifacients as a condition of receiving Medicare and Medicaid payments by threatening pharmacies with legal action.[11]

18. The Pharmacy Mandate asserts that "discrimination against pregnant [women] on the basis of their pregnancy or related conditions (examples below) is a form of sex discrimination. . . . Under federal civil rights law, pregnancy discrimination includes discrimination based on current pregnancy, past pregnancy, potential or intended pregnancy, and medical conditions related to pregnancy or childbirth."[12]

19. Citing Section 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 18116, and its implementing regulation, 45 C.F.R. part 92, the Pharmacy Mandate threatens enforcement actions under Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 197, and Section 504 of the Rehabilitation Act of 1973.[13]

20. None of those statutes address pregnancy discrimination. Nor do the ACA's implementing regulations. And, indeed, the Defendants know this. In August 2022, they issued a notice of proposed rulemaking that would amend the agency's interpretation of Section 1557 to include a prohibition against pregnancy discrimination. 87 Fed. Reg. 47,824 (Aug. 4, 2022).

---

[10] Exh. 1 at 2.

[11] *Id.*; Exh. 2.

[12] Exh. 2 at 3–4.

[13] *Id.* at 2; Ex. 1; *see also* 45 C.F.R. part 92.

21. And that isn't the only direct conflict between the Pharmacy Mandate and the statute it misinterprets. Indeed, the ACA includes language specifically rejecting the Pharmacy Mandate's interpretation:

> No Preemption of State Laws Regarding Abortion
>
> Nothing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions.

42 U.S.C. § 18023(c)(1).

22. The Pharmacy Mandate directly contradicts Title IX, too. Title IX specifically prohibits persons and entities from being required to "provide or pay for any benefit or service, including the use of facilities, related to an abortion." 20 U.S.C. § 1688. And as with the ACA, the Defendants know that Title IX does not address pregnancy discrimination: In June, the Department of Education issued a notice of proposed rulemaking that would "[a]rticulate [its] understanding that sex discrimination [as used in the statutory text of Title IX] includes discrimination on the basis of . . . pregnancy or related conditions."[14]

23. The Pharmacy Mandate also conflicts with the Hyde Amendment, which prohibits use of federal dollars to fund abortions except when the pregnancy is the result of rape or incest, or if the woman's life is in danger. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07. By conditioning pharmacies' receipt of federal funds on their dispensing of abortion-inducing drugs, Defendants' Pharmacy Mandate uses federal dollars to fund abortions

[14] 87 Fed. Reg. 41391 (July 12, 2022); *id.* at 41391 n.1.

outside the allowable scope of the Hyde Amendment. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07.

**C. Texas Abortion Laws**

**1. Human Life Protection Act**

24. Under Texas's Human Life Protection Act, "[a] person may not knowingly perform, induce, or attempt an abortion." Act of May 25, 2021, 87th Leg., R.S., ch. 800, 2021 Tex. Sess. Law Serv. 1887 (H.B. 1280) (codified at Tex. Health & Safety Code Ch. 170A). That prohibition does not apply if the woman on whom the abortion is performed "has a life-threatening physical condition" arising from a pregnancy that places her "at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed." H.B. 1280 at § 2 (codified at Tex. Health & Safety Code § 170A.002(b)(2)). The potential criminal penalty for violating this law is anywhere from two years to life in prison and a civil penalty not less than $100,000. *Id.* (codified at Tex. Health & Safety Code §§ 170A.004–.005); Tex. Penal Code §§ 12.32–.33.

**2. Pre-*Roe* Criminal Statutes**

25. In addition to the Human Life Protection Act, Texas statutes predating *Roe* also address the subject of abortion. *See* TEX. REV. CIV. STAT. arts. 4512.1–.4, .6. (former TEX. PENAL CODE arts. 1191–1194, 1196 (1925)). Under those statutes, any person who causes an abortion is guilty of an offense and shall be confined in a penitentiary. *Id.* at 4512.1. Moreover, an individual may not act as an accomplice to abortion or an attempted abortion. *Id.* at 4512.2–.3. However, it is not an offense if the abortion is performed under "medical advice for the purpose of saving the life of the mother." *Id.* at 4512.6.

26. Texas never repealed these statutes. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 399, § 5(a), 1973 Tex. Gen. Laws 883, 995 ("provid[ing] for the transfer of articles of the Penal Code of Texas, 1925, which are not repealed by this Act to the civil statutes or other appropriate places within the framework of Texas statute law, without reenactment and without altering the meaning or effect of the unrepealed articles."). They therefore remain current law. *See Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) ("When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it.").

**D. The Effects of the Pharmacy Mandate in Texas**

27. Texas is injured because the Pharmacy Mandate purports to preempt its laws by requiring pharmacies to stock and dispense abortifacients even if doing so would violate State law. This violates Texas's "sovereign interest in the power to create and enforce a legal code." *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (quotation omitted).

28. By requiring pharmacies that receive Medicare and Medicaid funds—including retail pharmacies operated by Texas Tech University Health Sciences Center—to dispense abortifacients when the life of the mother is *not* in danger, the Pharmacy Mandate flouts *Dobbs*'s holding that States may regulate abortion and directly infringes on Texas's sovereign and quasi-sovereign authority. *See* Declaration of Eric Bentley (Exhibit 4).

29. Compliance with State laws and regulations is an operational requirement for Texas pharmacies. 22 Tex. Admin. Code § 291.123(c)(3)(C)(iii); *Id.* § 291.153 (d)(1)(A)(i)(II). Texas pharmacists are required to abide by State laws governing the practice of pharmacy. *See*, *e.g.*, 22 Tex. Admin. Code § 295.3; Tex. Occ. Code § 565.001(a)(12). That requirement includes

compliance with Texas's abortion laws. Moreover, subject to limited exceptions, Texas law prohibits a person from "knowingly provi[ding] an abortion-inducing drug to a pregnant woman for the purpose of inducing an abortion." Tex. Health & Safety Code § 171.063.

30. Further, were it legal, the Pharmacy Mandate would require pharmacists to dispense abortifacients even if doing so would violate their professional judgment. Such a requirement violates Texas law, under which "a pharmacist has the exclusive authority to determine whether or not to dispense a drug." Tex. Occ. Code § 551.006.

31. Texas Tech University Health Sciences Center operates retail pharmacies that receive federal funds through Medicare and Medicaid. The Pharmacy Mandate requires Texas Tech to choose between violating State law or jeopardizing its ability to participate in Medicare and Medicaid. *See* Exhibit 4.

## IV. Claims for Relief

### COUNT 1: The Pharmacy Mandate Exceeds Statutory Authority and Is Not in Accordance with Law (5 U.S.C. §706)

32. The Pharmacy Mandate is being "applied . . . in a way that indicates it is binding." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). Therefore, it is a final agency action subject to judicial review under the APA.

33. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

34. The Pharmacy Mandate attempts to impose a legal duty on Texas pharmacies and pharmacists to dispense abortifacients. Defendants have no authority to impose such a duty, much less when it would violate State law.

35. Whether Defendants possess the political and constitutional authority they claim is a major question of "deep economic and political significance" that Courts will not assume that Congress has assigned to the Executive Branch. *See King v. Burwell*, 576 U.S. 473, 486 (2015) (quotation marks omitted); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). "We presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies." *W. Va. v. Envtl. Prot. Agency*, 142 S. Ct. 2587, 2609 (2022) (internal quotations omitted). An attempt to overrule state abortion laws by attaching strings to Medicaid and Medicare funding is a sizeable elephant; HHS's claim to have found it in a mousehole that both the ACA and Title IX disclaim exists demands scrutiny. *Cf. Whitman v. Am. Trucking Assns.*, 531 U.S. 457, 468 (2001).

**Count 1(A): The Pharmacy Mandate conflicts with federal law.**

36. The Pharmacy Mandate conflicts with the ACA—the statute Defendants contend purportedly authorizes this mandate. The ACA provides:

> No Preemption of State Laws Regarding Abortion
>
> Nothing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions.

42 U.S.C. § 18023(c)(1).

37. The Pharmacy Mandate conflicts with Title IX. Title IX does not protect against pregnancy discrimination, and it specifically prohibits requiring persons or entities to assist or participate in

the provision of an abortion. 20 U.S.C. §§ 1681, 1688. Nevertheless, the Pharmacy Mandate asserts that "discrimination against pregnant people on the basis of their pregnancy or related conditions . . . is a form of sex discrimination."[15] That is not the law under Title IX—or any of the other statutes incorporated by reference in Section 1557 of the ACA.

38. HHS cannot amend the statutes through agency rulemaking.

39. None of the statutes incorporated by reference in Section 1557 concern pregnancy discrimination. The Defendants know this and nevertheless state in the Pharmacy Mandate that "discrimination against pregnant people on the basis of their pregnancy or related conditions . . . is a form of sex discrimination."[16] Even if they could amend those statutes through agency rulemaking to make this true, they have not. Accordingly, the Pharmacy Mandate is a new legislative rule that alters pharmacies' legal obligations. *See Truckers United for Safety v. Fed. Highway Admin.*, 139 F.3d 934 (D.C. Cir. 1998).

40. The Pharmacy Mandate also conflicts with the Hyde Amendment, which prohibits federal dollars from being used to fund abortions except when the pregnancy is the result of rape or incest, or if the woman's life is in danger. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07. By conditioning pharmacies' receipt of federal funds on their dispensing abortion-inducing drugs, Defendants' Pharmacy Mandate uses federal dollars to fund abortions outside the allowable scope of the Hyde Amendment. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07.

---

[15] Exh. 2 at 3.

[16] *Id.*

41. The Department of Justice's (DOJ) appropriation act prevents it from using any funds to "require any person to perform, or facilitate in any way the performance of, any abortion." Consolidated Appropriations Act of 2022, Pub. L. 117-103, 136 Stat. 131, Div. B., Tit. II, § 203. DOJ's defense of the Pharmacy Mandate would necessarily spend federal funds to facilitate abortions.

**Count 1(B): The Pharmacy Mandate is an unconstitutional exercise of the Spending Power**

42. The Pharmacy Mandate is an unconstitutional exercise of the Spending Clause power.

43. The Affordable Care Act does not condition—let alone unambiguously condition—the receipt of federal funds on providing abortifacients. On the contrary, it specifically provides that it does not preempt State abortion laws. 42 U.S.C. § 18023(c)(1).

44. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously" so "States [can] exercise their choice knowingly." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). It must give "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply" with conditions in the Act. *Id.* at 25.

45. The executive branch cannot impose conditions on States' spending of federal monies if the Constitution would prohibit it from imposing those conditions directly on the States.

46. Because the federal government cannot force Texas to require that pharmacies dispense abortifacients, the Pharmacy Mandate's attempt to do so as a condition of funding is an unconstitutional exercise of Spending Power, U.S. Const. art. I, § 8, cl. 1, and must be enjoined. *See* 5 U.S.C. § 706(A), (c).

47. Defendants did not act in accordance with the law and exceeded their statutory authority when they issued the Pharmacy Mandate.

## COUNT 2: Failure to Conduct Notice and Comment (5 U.S.C. § 553)

48. Defendants must comply with the APA's notice-and-comment requirements before promulgating a rule. 5 U.S.C. § 553.

49. Subject to certain exceptions not relevant here, a "[g]eneral notice of proposed rulemaking shall be published in the Federal Register." 5 U.S.C. § 553(b). "After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(c). "The required publications or service of a substantive rule shall be made not less than 30 days before its effective date [with applicable exceptions]." 5 U.S.C. § 553(d).

50. The Pharmacy Mandate substantively changes the conditions for payment for services by requiring pharmacies that receive federal funds to dispense abortifacients, notwithstanding their obligations under Texas law. Accordingly, Defendants were required to provide an opportunity for public notice and comment.

51. Even if Defendants were authorized by statute to promulgate the Pharmacy Mandate, which they are not, the Court would still have to set it aside for failure to comply with the notice-and-comment requirements. "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

## COUNT 3: Arbitrary and Capricious Agency Action (5 U.S.C. § 706(2)(A))

52. An agency rule is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

53. "[A]gency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency "rule" is "the whole or a part of an agency statement or general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." *Id.* at § 551(4).

54. An agency action is arbitrary or capricious if it fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary and capricious." 5 U.S.C. § 706(2)(A).

55. Defendants did not engage in reasoned decision-making, but instead acted arbitrarily and capriciously, in issuing the Pharmacy Mandate.

56. The Pharmacy Mandate was issued in response to the President's Executive Order to counteract the effects of *Dobbs*—not as a result of reasoned decision-making.[17] Mere executive fiat falls well short of the requirements of a "satisfactory explanation."

57. The Pharmacy Mandate is arbitrary and capricious and must be set aside.

[17] *See* Exh. 1; Exh. 2.

## DECLARATORY JUDGMENT

58. The Declaratory Judgment Act authorizes federal courts to declare the rights of litigants. 28 U.S.C. § 2201. The issuance of a declaratory judgment can serve as the basis for an injunction to give effect to the declaratory judgment. *Steffel v. Thompson*, 415 U.S. 452, 461 n. 11 (1974).

59. For the reasons described above, Texas is entitled to a declaration that the Defendants are violating the law and the Pharmacy Mandate is unlawful, unconstitutional, and unenforceable.

## V. PRAYER FOR RELIEF

Texas respectfully requests that the Court:

a. Hold unlawful and set aside the Pharmacy Mandate;

b. Declare the Defendants' actions unlawful;

c. Issue a permanent injunction prohibiting Defendants from enforcing the Pharmacy Mandate;

d. Issue a permanent injunction prohibiting Defendants from enforcing the Pharmacy Mandate's interpretation of the discrimination and enforcement provisions of the statutes incorporated by reference in Section 1557 of the ACA;

e. Award Plaintiff costs and reasonable attorneys' fees;

f. Award such other relief as the Court deems equitable and just.

Dated February 7, 2023.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division
Texas Bar No. 24087727
Christopher.Hilton@oag.texas.gov

*/s/ Amy Snow Hilton*
**AMY SNOW HILTON**
Assistant Attorney General
Texas Bar No. 24097834
Amy.Hilton@oag.texas.gov

**COUNSEL FOR THE STATE OF TEXAS**